ORDERED.

Dated: January 17, 2019

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| MARTA MALAVE, | ) Case No. 6:18-bk-01355-KSJ |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| CARLA P. MUSSELMAN, TRUSTEE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adversary No. 6:18-ap-00063-KSJ |
| | ) |
| MARTA MALAVE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION DENYING DEBTOR'S DISCHARGE**

Plaintiff and Chapter 7 Trustee, Carla P. Musselman, objects to the Debtor/Defendant's discharge under § 727 of the Bankruptcy Code[1] because the Debtor transferred $12,000 to her son days before filing bankruptcy intending to hinder, delay, or defraud her creditors and knowingly

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et. seq.*

1

made a false oath in her bankruptcy filing by failing to disclose this transfer or her co-ownership of the bank account receiving these monies. Debtor does not deny she transferred $12,000 to her son, Alexander Pesante ("Mr. Pesante"), but argues the money was intended to pay his college expenses. She offers no credible explanation why she failed to disclose her co-ownership of the bank account receiving the $12,000, or why she failed to disclose the transfer. Debtor's discharge is denied.[2]

Before filing for bankruptcy on March 12, 2018,[3] the Debtor had two bank accounts at CFE Federal Credit Union ("CFE"). [4] She was the sole owner of owner of account ******63 ("Account 63"). She claimed Account 63 exempt under Florida Statute § 222.11(2)(b)[5] and Article X, Section 4(a)(2) of the Florida Constitution.[6] On Schedule B/C, the Debtor listed she had these amounts in Account 63: $339.39 in the Checking Account and $59.06 in the Savings Account.[7]

Debtor co-owned the second CFE account, ******28 ("Account 28"), with her son, Mr. Pesante.[8] Account 28 was opened when Mr. Pesante was a minor. Debtor's name was slightly misspelled as Martha (and not Marta) when she opened the account,[9] but no one disputes she was a co-owner of Account 28 when this bankruptcy case was filed.

Debtor falsely swore that Account 28 belonged solely to her son and valued it at zero on her Schedule B/C filed in this bankruptcy case.[10] Ms. Malave was at least the co-owner of Account 28, if not the primary owner. On March 2, 2018, shortly before this case was filed on March 12,

---

[2] The trial was held on December 10, 2018.
[3] Doc. No. 1 in the Main Case: 6:18-bk-1355-KSJ.
[4] Plaintiff's Ex. 3-4.
[5] Fla. Stat. Ann. § 222.11(2)(b).
[6] Plaintiff's Ex. 1.
[7] *Id.*
[8] Plaintiff's Ex. 6, 8. Account 28 has three sub-accounts: (1) Alex; (2) College Savings, and (3) Share Draft Checking.
[9] Tr. 24:13-18.
[10] Plaintiff's Ex. 1.

2018 (the "Petition Date"), Account 28 has a cash balance of $4,000.07.[11] Between March 2 and March 12, Debtor deposited an additional $8,000 into Account 28, resulting in a cash balance of $12,100.07 on the Petition Date. Tellingly, on the same day the Debtor swore under penalty of perjury that Account 28 has a $0 value, she deposited $100 into the account. The monies transferred into Account 28 largely came from Account 63,[12] and included the Debtor's 2017 tax refund of $5,488, received on March 5, 2018.[13] These monies were property of the Debtor's bankruptcy estate and were subject to administration by the Chapter 7 Trustee to pay the Debtor's unsecured creditors whose claims exceed $44,000.[14] Debtor failed to disclose her ownership of Account 28 or these transfers in her Schedules or Statement of Financial Affairs.[15]

The first meeting of creditors was held on April 18, 2018, and was continued three times.[16] On the date of the first meeting, Mr. Pesante returned $4,000 to Account 63.[17] Chapter 7 Trustee demanded turnover of $7,000 of the transferred funds at the meeting but the Debtor refused.[18] She also failed to amend her Schedules and the Statement of Financial Affairs.[19] Instead, after the 341 meeting concluded in May, the Debtor removed herself as a co-owner of Account 28.[20]

---

[11] Plaintiff's Ex. 8.
[12] Plaintiff's Ex. 3-4, 8; Tr. 12:2-15, 13:22-25, 17:5-16.
[13] Plaintiff's Ex. 4-5; Tr. 13:15-21.
[14] Debtor acknowledges claims of unsecured creditors of $44,302.47. Doc. No. 1, page 44 in Main Case 6:18-bk-1355-KSJ. Section § 541 provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See, e.g., In re Moody,* 241 B.R. 238 (Bankr.M.D.Fla.1999); *In re Innis*, 331 B.R. 784, 786 (Bankr. C.D. Ill. 2005) ("It is well established that the prepetition portion of a tax refund, falling within the definition of 'all legal or equitable interests of the debtor in property as of the commencement of the case,' is property of the bankruptcy estate under Section 541(a)(1)'"); *In re Braddy*, 226 B.R. 479, 481 (Bankr. N.D. Fla. 1998) ("wages earned by the debtor pre-petition become part of the estate")
[15] Plaintiff's Ex. 2.
[16] Plaintiff's Ex. 16-19.
[17] Tr. 20:21-25.
[18] Tr. 30:9-20.
[19] Plaintiff's Ex. 18, p. 3-4 (Debtor stating at the third meeting of creditors that she was not going to amend her Schedules and her Statement of Financial Affairs).
[20] Plaintiff's Ex. 11; Tr. 25:6-23; 26:4-14.

The primary purpose of a Chapter 7 consumer bankruptcy case is to reward an honest debtor with a fresh start from all debts—a discharge.[21] Courts construe objections to discharge liberally for the debtor and strictly against the objecting party.[22] However, only those debtors who disclose their assets may receive a discharge.[23] Early and complete disclosure by the honest debtor avoids extraordinary and unjustified work by Chapter 7 Trustees, who should not spend time recreating what "may" have happened to a debtor's assets.[24]

When a party objects to a debtor's discharge, the initial burden is on that party to prove the objection by a preponderance of the evidence.[25] Once met, the burden shifts to the debtor to rebut the allegations.[26] Plaintiff here argues the Debtor is precluded from discharging her debts because, intending to hinder, delay, or defraud her creditors, she transferred property of the Debtor and/or of the estate (§ 727(a)(2)(A)-(B)), and she knowingly or fraudulently made a false oath or account (§ 727(a)(4)(A)).

Section 727(a)(2)(A) and (B) of the Bankruptcy Code provides a debtor should not receive a discharge if the debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate has transferred, destroyed, mutilated or concealed "A) property of the debtor, within one year before the date of the filing of the petition; or B) property of the estate, after the date of the filing of the petition." To warrant denial of discharge under § 727(a)(2)(A), a plaintiff must show: "(1) that the act complained of was done within one year prior to the date the petition was filed, (2) with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and

---

[21] *Perez v. Campbell*, 402 U.S. 637, 660, 91 S. Ct. 1704, 1716, 29 L. Ed. 2d 233 (1971).
[22] *Coady v. D.A.N. Joint Venture III, L.P. (In re Coady)*, 588 F.3d 1312, 1315 (11th Cir. 2009); *Reynolds v. Trafford (In re Trafford)*, 377 B.R. 387, 392 (Bankr. M.D. Fla. 2007).
[23] *In re Coady*, 588 F.3d at 1315 (citing *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1338-39 (11th Cir. 2008)).
[24] *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1244 (11th Cir. 2008).
[25] Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659-60, 112 L. Ed. 2d 755 (1991).
[26] *Id.*

(4) that the act consisted on transferring, removing, destroying, or concealing any of the debtor's property."[27]

Section 727(a)(4)(A) provides that a debtor shall not receive a discharge where he or she "knowingly and fraudulently, in or in connection with the case, makes a false oath."[28] The false oath must be both fraudulent and material.[29] A false oath is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property."[30] An omission from a debtor's Schedules or Statement of Financial Affairs, for example, can constitute a false oath under § 727(a)(4).[31] After a plaintiff's initial burden is met, the burden shifts to the debtor to prove he or she did not knowingly and fraudulently make a material false oath.[32]

Applying these legal standards to the facts, Plaintiff asserts the Debtor transferred money to the account co-owned with Mr. Pesante intending to hinder, delay, or defraud her creditors. Trustee proved, and the Debtor admitted that $12,000 was transferred to Account 28 shortly before bankruptcy but not disclosed.[33] She also admitted she listed Account 28 in her Schedules solely under her son's name and that she valued it at zero.[34] The burden then shifted to the Debtor to explain why these transfers were not fraudulent. She failed.

Debtor's twenty-one year old son, Mr. Pesante, has spina bifida, which is a serious medical condition affecting his spinal cord and balance.[35] He must constantly take medicine and live with

---

[27] *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008).
[28] 11 U.S.C. § 727(a)(4)(A).
[29] *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir. 1991).
[30] *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984).
[31] *In re Whitehill*, 514 B.R. 687, 692 (Bankr. M.D. Fla. 2014).
[32] *Pellegrino, et al. v. Metro Unlimited and Dakhllahlah (In re Dakhllalah)*, Adversary No. 6:09-ap-739–KSJ, 2010 WL 148457 at *3 (Bankr. M.D. Fla. Jan. 7, 2010).
[33] Plaintiff Ex. 16, p. 10-12.
[34] Tr. 43:18-21.
[35] Tr. 61:7-25.

this difficult condition while attending college.[36] Mr. Pesante is a student at Valencia/UCF and receives help from his mother to pay for his education.[37] Debtor testified Account 28 was opened to help her pay and save for her son's college education.[38] She alleges the only reason her name was listed on Account 28 was because the account was opened when Mr. Pesante was a minor and she forgot to remove her name later on.[39]

The Court did not find this testimony credible. No evidence shows the bank account was a qualified savings plan for college and not a personal account funded by and co-owned by the mother.[40] Further, in the months after the Debtor filed for bankruptcy, Mr. Pesante used about $3,652 in funds from the "college account" in things unrelated to tuition and/or books including two trips, a play station, and purchases at GameStop.[41]

Debtor acknowledged Mr. Pesante sometimes used the account for "recreation."[42] Mr. Pesante admitted the account also was "basically for entertainment and other services for myself...the GameStop and such was for rewarding myself after a hard working semester, for summer."[43] So, rather than using the $12,000 to pay her creditors, the Debtor transferred the monies to her son who used it in part to pay school costs and in part for travel and video games.

The Court applauds the Debtor's efforts to help a son with a disability and understands she has faced many hardships. Unfortunately, the Debtor failed to credibly explain the $12,000 transfer to Account 28 within 60 days of filing for bankruptcy. The Court finds the transfers were made with the intent to hinder, delay, or defraud a creditor or an officer of the estate. The testimony that

---

[36] Tr. 62:1-11.
[37] Tr. 61:7-25, 62:1-11.
[38] *Id.*
[39] Tr. 15:19-25, 16:1-2; Plaintiff's Ex. 18, p. 14.
[40] Plaintiff's Ex. 18, p. 23.
[41] Plaintiff's Ex. 7; Tr. 20:1-7.
[42] Tr. 49:11-17.
[43] Tr. 63:21-22, 64:13-15.

the funds were to be used solely for education expenses was not credible when the Debtor admitted Mr. Pesante used the account for both education and recreation purposes.[44] Debtor simply did not want the Chapter 7 Trustee to get the money to pay her creditors.

Debtor also made a false oath by failing to list her co-ownership interest of Account 28 in her Schedules and by failing to disclose the transfers from Account 63 to Account 28 in the Statement of Financial Affairs. The transfers amounting to $12,000 were troubling and were close in time to the bankruptcy filing. Debtor offered no explanation for these false statements and omissions. Debtor wanted to help her son pay for his college which she accomplished by concealing the transfers and keeping the monies from the reach of the Trustee and her creditors.

Discharges are reserved for honest but unfortunate debtors. Debtor here made an intentional decision to funnel money to her son rather than turnover it over to the Chapter 7 Trustee. Debtor's discharge is denied. A separate final judgment consistent with this memorandum opinion will be entered simultaneously.

###

The Clerk is directed to serve a copy of this order on all interested parties.

---

[44] *See* Tr. 49:11-17.